UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN RE THE JOYCE C. DALTON TRUST

==============================

| | |
|---|---|
| DAVID P. OETTING, Trustee, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:20CV302 JCH |
| ) | |
| WELLS FARGO BANK, N.A., ) | |
| Former Co-Trustee, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss or, in the Alternative, for Appointment of Special Fiduciary ("Motion to Dismiss"), filed March 19, 2020. (ECF No. 9). The motion is fully briefed and ready for disposition.

**BACKGROUND[1]**

In or about 1988, Joyce C. Dalton ("Mrs. Dalton") created a Revocable Living Trust (the "Trust"). (Petition (hereinafter "Complaint" or "Compl."), ECF No. 6, ¶ 1). On January 19, 1998, Mrs. Dalton executed a Total Restatement of Revocable Trust Agreement for Joyce C. Dalton. (*See Id.*, attached to Plaintiff's Complaint as Exh. A, ECF No. 6-1). As relevant here, Mrs. Dalton provided that her children born before the date of the Trust included Andrea B. Dalton ("Andrea") and Arthur R. Dalton, Jr. (*Id.*, Article I(A)). Mrs. Dalton named A.G. Edwards Trust Company[2] and

---

[1] The majority of the Court's background section is taken from Plaintiff's Complaint and attached exhibits, to which Defendant has not yet filed an answer.

[2] Defendant is a successor-by-acquisition to A.G. Edwards Trust Company. (*See* Memorandum in

- 1 -

her attorney, Plaintiff David P. Oetting, to be co-trustees upon her death, incapacity or resignation. (*Id.*, Article II(B), (C)).  After providing for Mrs. Dalton during her lifetime and paying certain expenses, taxes and cash legacies, the Trust provided as follows:

> **Article VI.    Residue**
>
> > A.    I give the Residue of the Trust Fund, real and personal, wherever located, including any property mentioned above but not effectively disposed of, to my Descendants who survive me, <u>per stirpes</u>, subject, however, to the provisions of the Descendants' Trusts.
>
> **Article VII.    General Provisions Re Descendants' Trusts.**    Whenever property passes to my Descendants subject to the provisions of the Descendants' Trusts, to the extent provided in this Article the property shall not pass outright, but instead shall be held by the Trustees under this Agreement in accordance with the following directions:
>
> > A.    Such property shall be held in the Descendants' "Single Trust" if at the time in question the term for that trust as applied to that property has not yet expired.
>
> **Article VIII.    Single Trust for Descendants.**    The Descendants' Single Trust shall have these terms:
>
> > A.    During the Single Trust term:
> >
> > > 1.    As much of the net income and/or principal of the trust as the Trustees may from time to time determine shall be distributed to such one or more of my Children and Descendants of any deceased Child of mine, in such amounts or proportions, as the Trustees may from time to time select, for the recipient's health, education, support in his or her accustomed manner of living, or maintenance.
> > > 2.    As much of the net income and/or principal of the trust as the Trustees (excluding, however, any "Interested Trustee") may from time to time determine shall be distributed to such one or more of my Children and Descendants of any deceased Child of mine, in such amounts or proportions, as the Trustees (excluding, however, any Interested Trustee) may from time to time select, for any purpose.
> > > 3.    Any net income not so distributed shall be accumulated and from time to time shall be added to principal.

---

Support of Motion to Dismiss ("Defendant's Memo in Support"), P. 2 n. 2).

4. Without limiting the Trustees' discretion, I want the Trustees to know that, to the extent consistent with the foregoing, it would not be contrary to my intent for the Trustees to regard the needs of my daughter, ANDREA B. DALTON, who is mentally and physically deficient and who is residing in a special care facility as more important than those of my son or his Descendants.[3]

5. ANDREA who is an adult qualifies to receive government assistance because of her above condition. Without limiting the Trustees' discretion, I want the Trustees to know that, to the extent consistent with the foregoing, it would not be contrary to my intent for the Trustees to make available to ANDREA or for her benefit such income and thereafter principal from this trust as will not disqualify her from benefits available to her, unless in the sole discretion of a "Disinterested Trustee", such Trustee determines that for her overall benefit additional income and/or principal should be paid out for her benefit.

6. The Trustees, in their sole discretion, may use and apply the net income or principal on behalf of ANDREA directly (without the intervention of a legal guardian, conservator and/or custodian) for the uses and purposes hereinbefore stated.

(*Id.*, Articles VI-VIII). Mrs. Dalton died in 1998, and at that time the Trust became irrevocable. (Compl., ¶ 5). After Mrs. Dalton's death, Plaintiff and Defendant served as co-trustees of the Trust until Defendant resigned as trustee effective January 1, 2018. (*Id.*, ¶ 7).

According to Plaintiff, beginning in or around 2014 he learned that Defendant was paying expenses for Andrea, including her housing and medical care at Emmaus Homes. (Compl., ¶ 9). Plaintiff allegedly disputed Defendant's payment of the expenses, concerned they would interfere with Andrea's qualifying for government benefits and thus unnecessarily dissipate Trust assets. (*Id.*).[4] Around that same time, Emmaus Homes advised both Plaintiff and Defendant that it intended to move Andrea to a new facility. (*Id.*, ¶ 11). The proposed move stood to increase Andrea's care and living expenses significantly, and Plaintiff maintains he thus repeatedly asked Defendant for

---

3 According to Plaintiff, the primary beneficiary of the Trust is Andrea, the incapacitated adult daughter of Mrs. Dalton. (Compl., ¶ 4).
4 Plaintiff claims that while Defendant was co-trustee of the Trust, it routinely paid Andrea's living expenses, which often exceeded $60,000 per year, from the Trust. (Compl., ¶ 73). According to Plaintiff, the State of Missouri and/or other government entities had available financial assistance to

information regarding the management of Trust assets. (*Id.*, ¶¶ 11-12). While Defendant provided some information, including monthly statements regarding investments and information regarding invoices from and payments to Emmaus Homes, Plaintiff claims he did not receive adequate information regarding efforts to qualify Andrea for government assistance, including Social Security Disability and Medicaid payments. (*Id.*, ¶ 13).[5] Despite this lack of information, Plaintiff maintains that in early 2015, he began the lengthy and involved process of seeking additional government aid for Andrea, primarily in the form of state Medicaid funding. (*Id.*, ¶ 80). Plaintiff claims he eventually secured such assistance, thereby saving the Trust somewhere between $60,000 and $350,000 per year on an indefinite basis. (*Id.*, ¶ 81).

On or about November 9, 2017, Defendant provided notice that it intended to resign as co-trustee of the Trust. (Compl., ¶ 16).[6] On or about January 30, 2018, Defendant filed a Petition for Judicial Approval of Trustee Accounts in the Circuit Court of St. Louis County, Missouri, Probate Division (the "Wells Fargo Lawsuit"). (*Id.*, ¶ 20). Named as Defendants were Andrea (in her capacity as primary beneficiary of the Trust); Colleen and David Barringer (in their capacity as co-guardians of Andrea); Arthur Rex Dalton, Jr. and Tresa Dalton (in their capacity as contingent beneficiaries of the Trust); and Plaintiff (in his capacity as trustee of the Trust). (*See* Petition for Judicial Approval of Trustee Accounts, attached to Plaintiff's Complaint as Exh. F, ECF No. 6-6). On or about March 14, 2018, Plaintiff filed a Motion to Collect Trust Property in the Wells Fargo Lawsuit, seeking to collect certain property and records of the Trust from Defendant. (Compl., ¶ 28). Defendant voluntarily dismissed its Petition for Judicial Approval of Trustee Accounts on May

---

pay all or a significant part of Andrea's living expenses. (*Id.*, ¶ 74).
5 Plaintiff further asserts he repeatedly requested that Defendant produce materials relating to internal and external investigations by various government agencies regarding a variety of malfeasance and fraud allegedly committed by Defendant. (Compl., ¶ 14).
6 Defendant's resignation became effective on January 1, 2018, and Plaintiff has served as sole trustee since that time. (Compl., ¶¶ 18-19).

16, 2018, and according to Plaintiff, said dismissal prevented him from being heard on his Motion to Collect Trust Property.  (*Id.*, ¶¶ 30-31).

On or about January 24, 2020, Plaintiff, as trustee of the Trust, filed a Petition in the Circuit Court of St. Louis County, Missouri, Probate Division, against Defendant Wells Fargo Bank, N.A., as former co-trustee.  (ECF No. 6).  Plaintiff asserts he brings claims "to recover funds of the Trust [] that were wrongly disbursed by the former co-trustee Wells Fargo, without Mr. Oetting's knowledge, and to recover attorney fees from Wells Fargo for litigation that Wells Fargo wrongfully commenced and then abruptly terminated relating to the Trust."  (*Id.*, P. 1).  Plaintiff lodges the following claims against Defendant:  Suit against Former Co-Trustee Wells Fargo for Attorney Fees and Costs Relating to Failure to Timely Turn Over Trust Property (Count I)[7]; Recovery Against Wells Fargo of Extraordinary Fees and Attorney's Fees and Costs (Count II); Negligence Against Wells Fargo for Using Trust Assets to Pay Andrea Dalton's Living Arrangements Instead of Obtaining State Assistance (Count III); Wrongful Retention and Conversion of Trust Property Against Wells Fargo (Count IV); Frivolous and Wrongful Use of Civil Proceedings By Wells Fargo (Count V); and Disgorgement of Fees Against Wells Fargo (Count VI).

On February 24, 2020, Defendant removed Plaintiff's action to this Court, on the basis of diversity jurisdiction.  (ECF No. 1).  Defendant filed the instant Motion to Dismiss on March 19, 2020, asserting Count III of Plaintiff's Complaint should be dismissed because (1) neither applicable trust law nor the trust instrument imposes a duty on Defendant as alleged by Plaintiff to seek out government assistance for a beneficiary, and (2) even if such a duty did exist, Plaintiff is as culpable as—if not more culpable than—Defendant for failing to seek out assistance for Andrea, and thus

---

7 Plaintiff alleges that following its resignation as co-trustee of the Trust, Defendant wrongfully elected to withhold money from the transfer of Trust assets, in order to reimburse itself for anticipated attorney's fees and expenses in connection with the Wells Fargo Lawsuit. (Compl., ¶¶ 42-45).  While Defendant ultimately repaid the funds it had withheld, Plaintiff claims Defendant's

cannot act in the interests of the Trust's beneficiaries due to a conflict of interest.  (ECF Nos. 9, 10).[8]

Because it is dispositive, the Court addresses only the latter assertion.

## DISCUSSION

As noted above, in its Motion to Dismiss Defendant asserts that assuming an affirmative duty to seek out government benefits existed for the trustees, it follows that Plaintiff cannot adequately represent the Trust's beneficiaries because he is afflicted by an untenable conflict of interest.  (*See* Defendant's Memo in Support, P. 8).  In other words, Defendant maintains that if in fact a duty existed for anyone to seek government assistance, then Plaintiff is equally as culpable as Defendant (in light of his role as co-trustee), and thus more appropriately situated as a defendant in this action rather than a plaintiff.  (*Id.*, PP. 8-9).[9]

The Court finds Defendant's conflict of interest argument raises the question of Plaintiff's standing to pursue Count III of his Complaint.  The Eighth Circuit has held that there exist two strands in standing jurisprudence:  "'Article III standing, which enforces the Constitution's case-or-controversy requirement; and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction.'"  *Americans United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 419 (8th Cir. 2007) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-12, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) (internal citations and quotation marks omitted)).

---

actions forced him to expend time and incur attorney's fees.  (*Id.*, ¶¶ 53, 58).

8 Defendant claims Plaintiff is "impeded in pursuing this litigation and representing the interests of the Trust's beneficiaries by his own self-interest in avoiding liability."  (Defendant's Motion to Dismiss, P. 2).

9 Defendant maintains Plaintiff actually is "more culpable by orders of magnitude", as Plaintiff allegedly acted in all of the following capacities:  Counsel for Mrs. Dalton, the settlor, personally; Counsel for Mrs. Dalton, as guardian for Andrea; Counsel for Janet Barringer, as successor guardian for Andrea; Counsel for David and Colleen Barringer, as successor guardians for Andrea; and Co-trustee of the Trust from 1998 to the present.  (Defendant's Memo in Support, PP. 8-9).

> Whereas the Constitutional requirements focus upon the existence of a case or controversy, the prudential limitations focus upon the identity of the party-plaintiffs. That is, it is a question of whether the plaintiffs are "proper proponents of the particular legal rights on which they base their suit." *Singleton v. Wulff*, 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826, 832 (1976), *Regents of Univ. of Minn. v. National Collegiate Athletic Association*, 560 F.2d 352 (8th Cir. 1977).

*School Dist. of Kansas City, Mo. v. State of Mo.*, 460 F.Supp. 421, 437 (W.D. Mo. 1978). "The prudential limitations placed on standing have been established to insure that the plaintiff is not only an aggrieved party but also an effective advocate of the issues." *Id.* at 438-39.

Upon consideration the Court holds that even if Plaintiff, as current sole trustee of the Trust, ordinarily would possess standing to asserts the rights of certain third parties, *i.e.*, the Trust beneficiaries and/or Andrea's guardians, "other very practical considerations and factors lead to the conclusion that critical prudential restrictions exist warranting the denial of standing to [Plaintiff]." *Id.* at 440. Of primary concern is the distinct potential for the evidence to uncover acts of negligence or breach of trust by Plaintiff himself. *Id.* In other words, while Plaintiff claims he first learned in 2014 that Wells Fargo was paying certain expenses for Andrea, and that Wells Fargo made the payments without his knowledge and then refused to give him the documents necessary to uncover its misconduct (*see* Response of David P. Oetting in Opposition To Motion to Dismiss, PP. 3, 11), Defendant's evidence reveals that Plaintiff was cc'd in 2006 on a Support Plan for Andrea that clearly showed she was "private pay", her expenses were paid from a trust fund, and she did not receive SI/SS/VA and/or Railroad Retirement. (*See* Defendant's Exh. F, ECF No. 10-6).[10] Furthermore, it is undisputed that Plaintiff did not attempt to secure government benefits for Andrea

---

[10] As noted by Defendant, the Court properly may consider matters of public record in support of a motion to dismiss without converting the motion to one for summary judgment. *See Dittmer Properties, L.P. v. Fed. Deposit Ins. Corp.*, 708 F.3d 1011, 1021 (8th Cir. 2013).

from 1998 to 2015, despite the fact that the Trust itself instructed she qualified for such assistance. (*See* Trust, Article VIII(A)(5)).

Upon consideration of the foregoing, the Court finds these factors militate against Plaintiff acting as primary advocate of the Trust beneficiaries' rights. The potential for conflict between the interests of the Trust beneficiaries, seeking to show the greatest extent of negligence/breach of trust on the part of the trustees, and the interests of Plaintiff, who may resist the introduction of incriminating evidence concerning his own past or present actions, "is a very real and threatening potential." *Id.* at 441. This grave concern leads to the conclusion that "even if [Plaintiff] could satisfy the constitutional requirements of standing, the prudential limitations expressed in the doctrine of jus tertii lead to the conclusion that [Plaintiff] is not the correct nor effective advocate of [the Trust beneficiaries'] rights." *Id.* at 442. Defendant's Motion to Dismiss Count III of Plaintiff's Complaint will therefore be granted.[11]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss or, in the Alternative, for Appointment of Special Fiduciary (ECF No. 9) is **GRANTED** in part, and Count III of Plaintiff's Complaint is **DISMISSED** without prejudice.

Dated this 15th Day of June, 2020.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[11] Because Mr. Oetting (as Trustee) is the only Plaintiff, the Court will dismiss Count III rather than realign him as a party-defendant. The dismissal is without prejudice to the right of a proper party plaintiff to refile the claim.