UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN RE THE JOYCE C. DALTON TRUST

================================

| | | |
|---|---|---|
| DAVID P. OETTING, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:20CV302 JCH |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| Former Co-Trustee, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss

Count VII of Plaintiff's Amended Complaint, filed October 12, 2020.  (ECF No. 46).  The motion is

fully briefed and ready for disposition.

## BACKGROUND[1]

In or about 1988, Joyce C. Dalton ("Mrs. Dalton") created a Revocable Living Trust (the

"Trust").  (Amended Complaint (at times "Compl."), ECF No. 43, ¶ 1).  On January 19, 1998, Mrs.

Dalton executed a Total Restatement of Revocable Trust Agreement for Joyce C. Dalton.  (*See* Total

Restatement of Revocable Trust Agreement, attached to Plaintiff's original Complaint as Exh. A,

ECF No. 6-1[2]).  As relevant here, Mrs. Dalton provided that her children born before the date of the

---

1 The majority of the Court's background section is taken from Plaintiff's Amended Complaint, to
which Defendant has not yet filed an answer.
2 Although Plaintiff did not attach the Total Restatement of Revocable Trust Agreement or other
exhibits to his Amended Complaint, he attached them to his original Complaint.  Because
Plaintiff references the exhibits in his Amended Complaint, the Court finds it appropriate to

Trust included Andrea B. Dalton ("Andrea") and Arthur R. Dalton, Jr.  (*Id.*, Article I(A)).  Mrs.

Dalton named A.G. Edwards Trust Company[3] and her attorney, Plaintiff David P. Oetting, to be co-

trustees upon her death, incapacity or resignation.  (*Id.*, Article II(B), (C)).  After providing for Mrs.

Dalton during her lifetime and paying certain expenses, taxes and cash legacies, the Trust provided

as follows:

> **Article VI.     Residue**
>
>> A.      I give the Residue of the Trust Fund, real and personal, wherever
>> located, including any property mentioned above but not effectively
>> disposed of, to my Descendants who survive me, <u>per stirpes</u>, subject,
>> however, to the provisions of the Descendants' Trusts.
>
> **Article VII.    General Provisions Re Descendants' Trusts.**      Whenever
> property passes to my Descendants subject to the provisions of the Descendants'
> Trusts, to the extent provided in this Article the property shall not pass outright, but
> instead shall be held by the Trustees under this Agreement in accordance with the
> following directions:
>
>> A.      Such property shall be held in the Descendants' "Single Trust" if at
>> the time in question the term for that trust as applied to that property has
>> not yet expired.
>
> **Article VIII.   Single Trust for Descendants.**      The Descendants' Single Trust
> shall have these terms:
>
>> A.      During the Single Trust term:
>>
>>> 1.      As much of the net income and/or principal of the trust as the
>>> Trustees may from time to time determine shall be distributed to
>>> such one or more of my Children and Descendants of any
>>> deceased Child of mine, in such amounts or proportions, as the
>>> Trustees may from time to time select, for the recipient's health,
>>> education, support in his or her accustomed manner of living, or
>>> maintenance.
>>> 2.      As much of the net income and/or principal of the trust as the
>>> Trustees (excluding, however, any "Interested Trustee") may
>>> from time to time determine shall be distributed to such one or
>>> more of my Children and Descendants of any deceased Child of

consider them on this Motion to Dismiss.

3 Defendant is a successor-by-acquisition to A.G. Edwards Trust Company, the original corporate
Trustee of the Trust.  (*See* Amended Complaint, P. 1 n. 1).

      mine, in such amounts or proportions, as the Trustees (excluding, however, any Interested Trustee) may from time to time select, for any purpose.

3.      Any net income not so distributed shall be accumulated and from time to time shall be added to principal.

4.      Without limiting the Trustees' discretion, I want the Trustees to know that, to the extent consistent with the foregoing, it would not be contrary to my intent for the Trustees to regard the needs of my daughter, ANDREA B. DALTON, who is mentally and physically deficient and who is residing in a special care facility as more important than those of my son or his Descendants.[4]

5.      ANDREA who is an adult qualifies to receive government assistance because of her above condition. Without limiting the Trustees' discretion, I want the Trustees to know that, to the extent consistent with the foregoing, it would not be contrary to my intent for the Trustees to make available to ANDREA or for her benefit such income and thereafter principal from this trust as will not disqualify her from benefits available to her, unless in the sole discretion of a "Disinterested Trustee", such Trustee determines that for her overall benefit additional income and/or principal should be paid out for her benefit.

6.      The Trustees, in their sole discretion, may use and apply the net income or principal on behalf of ANDREA directly (without the intervention of a legal guardian, conservator and/or custodian) for the uses and purposes hereinbefore stated.

(*Id.*, Articles VI-VIII). Mrs. Dalton died in 1998, and at that time the Trust became irrevocable. (Compl., ¶ 5). After Mrs. Dalton's death, Plaintiff and Defendant served as co-trustees of the Trust until Defendant resigned as trustee effective January 1, 2018. (*Id.*, ¶ 7).

According to Plaintiff, in or around 2014 he learned that Defendant was paying expenses for Andrea, including her housing and medical care at Emmaus Homes. (Compl., ¶ 9). Plaintiff allegedly disputed Defendant's payment of the expenses, concerned they would interfere with Andrea's qualifying for government benefits and thus unnecessarily dissipate Trust assets. (*Id.*). Around that same time, Emmaus Homes advised both Plaintiff and Defendant that it intended to move Andrea to a new facility. (*Id.*, ¶ 11). The proposed move stood to increase Andrea's care and

---

4 According to Plaintiff, the primary beneficiary of the Trust is Andrea, the incapacitated adult daughter of Mrs. Dalton. (Compl., ¶ 4).

living expenses significantly, and Plaintiff maintains he thus repeatedly asked Defendant for information regarding the management of Trust assets. (*Id.*, ¶¶ 11-12). While Defendant provided some information, including monthly statements regarding investments and information regarding invoices from and payments to Emmaus Homes, Plaintiff claims he did not receive adequate information regarding efforts to qualify Andrea for government assistance, including Social Security Disability and Medicaid payments. (*Id.*, ¶ 13).[5]

On or about November 9, 2017, Defendant provided notice that it intended to resign as co-trustee of the Trust. (Compl., ¶ 16).[6] On or about January 30, 2018, Defendant filed a Petition for Judicial Approval of Trustee Accounts in the Circuit Court of St. Louis County, Missouri, Probate Division (the "Wells Fargo Lawsuit"). (*Id.*, ¶ 20). Named as Defendants were Andrea (in her capacity as primary beneficiary of the Trust); Colleen and David Barringer (in their capacity as co-guardians of Andrea); Arthur Rex Dalton, Jr. and Tresa Dalton (in their capacity as contingent beneficiaries of the Trust); and Plaintiff (in his capacity as trustee of the Trust). (*See* Petition for Judicial Approval of Trustee Accounts, attached to Plaintiff's original Complaint as Exh. F, ECF No. 6-6). On or about March 14, 2018, Plaintiff filed a Motion to Collect Trust Property in the Wells Fargo Lawsuit, seeking to collect certain property and records of the Trust from Defendant. (Compl., ¶ 28). Defendant voluntarily dismissed its Petition for Judicial Approval of Trustee Accounts on May 16, 2018, and according to Plaintiff, said dismissal prevented him from being heard on his Motion to Collect Trust Property. (*Id.*, ¶¶ 30-31).

On or about January 24, 2020, Plaintiff, as trustee of the Trust, filed a Petition in the Circuit Court of St. Louis County, Missouri, Probate Division, in which he lodged six claims against

---

5 Plaintiff further asserts he repeatedly requested that Defendant produce materials relating to internal and external investigations by various government agencies regarding a variety of malfeasance and fraud allegedly committed by Defendant. (Compl., ¶ 14).
6 Defendant's resignation became effective on January 1, 2018, and Plaintiff has served as sole

Defendant Wells Fargo Bank, N.A., as former co-trustee. (ECF No. 6). Defendant removed the case

to this Court on February 24, 2020. (ECF No. 1). In a Memorandum and Order entered June 15,

2020, the Court dismissed Count III of Plaintiff's Complaint (for negligence), holding that the

potential for conflict between the interests of the Trust beneficiaries, seeking to show the greatest

extent of negligence/breach of trust on the part of the trustees, and the interests of Plaintiff, who may

resist the introduction of incriminating evidence concerning his own past or present actions, led to

the conclusion that Plaintiff was neither the correct nor an effective advocate of the Trust

beneficiaries' rights. (ECF No. 21).

On September 16, 2020, with leave of Court, Plaintiff filed his Amended Complaint, in

which he purports to bring claims "to recover funds of the Trust that were wrongly disbursed by the

former co-trustee Wells Fargo, without Mr. Oetting's knowledge, and to recover attorney fees from

Wells Fargo for litigation that Wells Fargo wrongfully commenced and then abruptly terminated

relating to the Trust." (ECF No. 43, P. 1). Plaintiff lodges the following claims against Defendant:

Suit against Former Co-Trustee Wells Fargo for Attorney Fees and Costs Relating to Failure to

Timely Turn Over Trust Property (Count I)[7]; Recovery Against Wells Fargo of Extraordinary Fees

and Attorney's Fees and Costs (Count II); Wrongful Retention and Conversion of Trust Property

Against Wells Fargo (Count IV)[8]; Frivolous and Wrongful Use of Civil Proceedings By Wells Fargo

(Count V); Disgorgement of Fees Against Wells Fargo (Count VI); and Claim against Wells Fargo

for Violation of the Missouri Merchandising Practices Act ("MMPA") (Count VII).

---

trustee since that time. (Compl., ¶¶ 18-19).

[7] Plaintiff claims that following its resignation as co-trustee of the Trust, Defendant wrongfully elected to withhold money from the transfer of Trust assets, in order to reimburse itself for anticipated attorney's fees and expenses in connection with the Wells Fargo Lawsuit. (Compl., ¶¶ 42-45). While Defendant ultimately repaid the funds it had withheld, Plaintiff claims Defendant's actions forced him to expend time and incur attorney's fees. (*Id.*, ¶¶ 53, 58).

[8] Plaintiff reserved his dismissed Count III for Negligence against Wells Fargo for Using Trust Assets to Pay Andrea Dalton's Living Arrangements Instead of Obtaining State Assistance.

As noted above, Defendant filed the instant Motion to Dismiss on October 12, 2020, seeking dismissal of Count VII of Plaintiff's Amended Complaint because (a) Plaintiff's untenable conflict of interest divests him of standing to represent the Trust's beneficiaries; (b) the five-year statute of limitations has expired on Plaintiff's MMPA claim; and (c) there exists no obligation for a special need trustee--or any trustee—to apply for public benefits on behalf of a beneficiary.  (ECF No. 46). Because it is dispositive, the Court addresses only Defendant's statute of limitations argument.

### DISCUSSION

The MMPA makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce….in or from the State of Missouri."  Mo. Rev. St. § 407.020.1. According to Plaintiff Defendant represented, and Plaintiff believed, that Defendant had the requisite expertise to manage special needs trusts, and was using its expertise to manage the Trust.  (Compl., ¶ 115).  Plaintiff claims that although Defendant represented it would use its expertise to seek and obtain all available government aid for Andrea, it did not seek or obtain all such available aid, instead utilizing Trust assets to pay the expenses incurred in connection with Andrea's care.  (*Id.*, ¶¶ 116-118).   Plaintiff asserts Defendant's failures resulted in unnecessary expenditures of approximately $800,000 from Trust assets for care that government assistance otherwise would have funded.  (*Id.*, ¶ 120).

As noted above, in its Motion to Dismiss Defendant asserts that the applicable statute of limitations has run on Plaintiff's MMPA claim.  (*See* Defendant's Memorandum in Support of Motion to Dismiss Count VII of First Amended Complaint, P. 4).   Under Missouri law, the limitation period for an MMPA claim is five years.  *See* Mo. Rev. Stat. § 516.120. *See also Owen v. General Motors Corp.*, 533 F.3d 913, 921 n. 6 (8th Cir. 2008) (five-year limitation period in §

– 6 –

516.120 applies to MMPA claims); *Glen v. Fairway Indep. Mortg. Corp.*, 265 F.R.D. 474, 477 (E.D. Mo. 2010) ("The five-year limitations period provided by Mo.Rev.Stat. § 516.120(2) applies to plaintiffs' MMPA claim.").

> This period begins to run from the time "a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 582 (Mo. 2006) (en banc); *see also State ex. rel. Old Dominion Freight Line, Inc. v. Dally,* 369 S.W.3d 773, 778 (Mo.Ct.App. 2012) ("[T]he test is not when a reasonable person *knows* that damages have occurred, but is when that person would have notice of a *potentially* actionable injury.").

*Huffman v. Credit Union of Texas*, No. 11-0022-CV-W-ODS, 2013 WL 1121268, at *3 (W.D. Mo. Mar. 18, 2013).  "In order for the statute [of limitations] to accrue, plaintiff must have knowledge of the wrong and at least nominal damage, or [knowledge] of something that puts plaintiff on notice to inquire further."  *Ball v. Friese Const. Co.*, 348 S.W.3d 172, 177 (Mo. App. 2011) (internal quotation marks and citation omitted).

Upon consideration, the Court finds that Plaintiff's own allegations demonstrate the statute of limitations has run on Plaintiff's MMPA claim.  As noted above, Plaintiff claims he first learned in 2014 that Wells Fargo was paying certain expenses for Andrea, and that he disputed Wells Fargo's payment of said expenses because he was concerned the payments would interfere with Andrea qualifying for government benefits and thus unnecessarily dissipate Trust assets.  (Compl., ¶ 9). Plaintiff further claims he "became concerned whether Wells Fargo and/or Emmaus Homes had taken or were taking appropriate steps to ensure Andrea received all government assistance for which she qualified," and so he repeatedly asked Defendant for information regarding its management of Trust assets.  (*Id.*, ¶¶ 10, 12).  Under these circumstances, the Court finds Plaintiff's MMPA cause of action accrued sometime in 2014, and thus the statute of limitations expired

sometime in 2019, prior to Plaintiff's filing his original Complaint in this matter on January 24, 2020.  Plaintiff's MMPA claim must therefore be dismissed as untimely filed.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss (ECF No. 46) is **GRANTED**, and Count VII of Plaintiff's Amended Complaint is **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Extension of Time to Answer Counts I through VI in Plaintiff's Amended Complaint (ECF No. 48) is **GRANTED**, and Defendant is granted until **Thursday, December 24, 2020**, within which to file its answer to Counts I through VI of Plaintiff's Amended Complaint.

Dated this 11th Day of December, 2020.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE